# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *ET AL.,* *EX REL.* PATRICK CARPENTER, ) ) ) ) Plaintiffs, ) ) ) -v.- ) ) ABBOTT LABORATORIES, ) ) Defendant. ) ) | Civil No.: 07-CV 10918 (RGS) The Honorable Richard G. Stearns |

## DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Peter E. Gelhaar (BBO# 188310)
Michael S. D'Orsi (BBO# 566960)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street
33rd Floor
Boston, Massachusetts 02108
617-720-2880
617-720-3554 – Fax

James F. Hurst (admitted *pro hac vice*)
Thomas J. Frederick (admitted *pro hac vice*)
Kathleen B. Barry (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
(312) 558-5700 – Fax

John W. Moss (admitted *pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street N.W.
Washington, D.C. 20006
(202) 282-5000
(202) 282-5100 – Fax

*Attorneys for Defendant Abbott Laboratories, Inc., incorrectly named as Abbott Laboratories*

Dated: January 5, 2010

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT............................................................................................................................1

   A. Carpenter's Amended Complaint Fails to Allege Violations of the FCA with Particularity....................................................................................................................1

      1. Carpenter Fails to Plead with Particularity How Abbott Caused the Submission of False Claims ...............................................................................1

      2. Carpenter Fails to Plead a Kickback Scheme with Particularity ................................5

      3. Carpenter Fails to Allege with Particularity Claims for Reimbursement of Off-Label Prescriptions ......................................................................................6

      4. Carpenter Fails to Allege with Particularity Claims for Reimbursement Tainted by Kickbacks..........................................................................................7

      5. Carpenter Fails to Allege with Particularity Claims Under State False Claims Acts............................................................................................................7

   B. Carpenter Cannot Allege Medicaid False Claims in Massachusetts as a Matter of Law .................................................................................................................................8

   C. Carpenter's Claims Are Implausible, Requiring Dismissal of the Complaint...................10

III. CONCLUSION........................................................................................................................10

i

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allison Engine Co. v. United States ex rel. Sanders*,
    128 S. Ct. 2123 (2008) .................................................................................................. 2, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 10

*California ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Labs., Inc.*,
    478 F. Supp. 2d 164 (D. Mass. 2007) (*Ven-A-Care I*) ....................................................... 5

*Connecticut General Life Insurance Co. v. Universal Insurance Co.*,
    838 F.2d 612 (1st Cir. 1988) ............................................................................................. 7

*Hopper v. Solvay Pharm., Inc.*,
    No. 08-15810, ___ F. 3d ___, 2009 WL 4429519 (11th Cir. Dec. 4, 2009) ............. 1, 2, 3, 4

*In re Zyprexa Prods. Liability Litig.*,
    Nos. 04-md-1596, 07-cv-645, ___ F. Supp. 2d ___, 2009 WL 4260857 (E.D.N.Y.
    Dec. 1, 2009) .................................................................................................................... 4

*United States ex rel. Duxbury v. Ortho Biotech Prod.*,
    579 F.3d 13 (1st Cir. 2009) ...................................................................................... passim

*United States ex rel. Franklin v. Parke-Davis*,
    147 F. Supp. 2d 39 (D. Mass. 2001) (*Parke-Davis I*) ....................................................... 4

*United States ex rel. Franklin v. Parke-Davis*,
    No. 96-cv-11651, 2003 U.S. Dist. LEXIS 15754 (D. Mass. Aug. 22, 2003) (*Parke-
    Davis II*) ........................................................................................................................... 4

*United States ex rel. Gagne v. City of Worchester*,
    565 F.3d 40 (1st Cir. 2009) ........................................................................................ 2, 10

*United States ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ............................................................................................ 6

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
    360 F.3d 220 (1st Cir. 2004) ......................................................................................... 7, 8

*United States ex rel. Polansky v. Pfizer, Inc.*,
    No. 04-cv-704, 2009 WL 1456582 (E.D.N.Y. May 22, 2009) .......................................... 4

*United States ex rel. Poteet v. Lenke*,
    604 F. Supp. 2d 313 (D. Mass. 2009) ........................................................................... 3, 6

*United States ex rel. Rost v. Pfizer*,
    446 F. Supp. 2d 6 (D. Mass. 2006) (*Rost I*) .............................................................................4

*United States ex rel. Rost v. Pfizer, Inc.*,
    507 F.3d 720 (1st Cir. 2007) (*Rost II*) ..................................................................................4, 7

*United States ex rel. Rost v. Pfizer, Inc.*,
    253 F.R.D. 11 (D. Mass. 2008) (*Rost III*) .............................................................................8, 9

*United States ex rel. Sanders v. Allison Engine Co.*,
    Nos. 1:95-cv-970, 1:99-cv-923, ___ F. Supp. 2d ___, 2009 WL 3626773 (S.D. Ohio
    Oct. 27, 2009) (*Allison Engine II*) ....................................................................................1, 2, 4

*United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Labs., Inc.*,
    491 F. Supp. 2d 12 (D. Mass. 2007) (*Ven-A-Care II*) ..............................................................5

*United States ex rel. West v. Ortho-McNeil Pharm., Inc.*,
    538 F. Supp. 2d 367 (D. Mass. 2008) ...................................................................................5, 8

*United States v. Sci. Applications Int'l Corp.*,
    No. 04-1543, ___ F. Supp. 2d ___, 2009 WL 2929250 (D.D.C. Sept. 14, 2009) ......................1

**STATUTES**

31 U.S.C. § 3729(a)(2) ....................................................................................................................1, 2

**OTHER AUTHORITIES**

42 C.F.R. § 1001.952(d) .........................................................................................................................2

130 C.M.R. § 406.413(C)(4) ..................................................................................................................9

Fed. R. Civ. P. 8 .....................................................................................................................................7

Fed. R. Civ. P. 9(b) ....................................................................................................................2, 3, 7, 8

iii

**I.     INTRODUCTION**

Carpenter's opposition fails to rebut the grounds for dismissal set forth in Abbott's opening brief. Accordingly, his complaint should be dismissed.

**II.    ARGUMENT**

    **A.    Carpenter's Amended Complaint Fails to Allege Violations of the FCA with Particularity**

        **1.    Carpenter Fails to Plead with Particularity How Abbott Caused the Submission of False Claims**

In responding to Abbott's argument that he has failed to plead with particularity how Abbott allegedly caused the submission of false claims (*see* Mem. at 14-17), Carpenter begins by misstating the law. He mistakenly argues that the May 2009 FCA amendments, which modified the pleading requirements for a claim under 31 U.S.C. § 3729(a)(2), apply to this case. *See* Opp. at 3 n.3. Instead, the pre-amendment statutory language applies because, as several courts have recently recognized, the retroactive portion of the amendments to Section 3729(a)(2) applies to "claims" for payment under the FCA, and not to "cases" that were pending on or after June 7, 2008. *See Hopper v. Solvay Pharm., Inc.,* No. 08-15810, ___ F. 3d ___, 2009 WL 4429519, at *7 n.3 (11th Cir. Dec. 4, 2009); *United States v. Sci. Applications Int'l Corp.*, No. 04-1543, ___ F. Supp. 2d ___, 2009 WL 2929250, at *14 (D.D.C. Sept. 14, 2009).[1] Because all of the alleged false claims Carpenter cites were filed prior to April 2007, his allegations do not support the

---

[1] The First Circuit has not yet decided whether the FCA amendments apply retroactively but in *Duxbury*, an opinion decided after the amendments took effect, it recognized that *Allison Engine* continues to apply to a Section 3729(a)(2) claim. *United States ex rel. Duxbury v. Ortho Biotech Prod.,* 579 F.3d 13, 30 (1st Cir. 2009); *see also United States ex rel. Sanders v. Allison Engine Co.*, Nos. 1:95-cv-970, 1:99-cv-923, ___ F. Supp. 2d ___, 2009 WL 3626773, at *4 (S.D. Ohio Oct. 27, 2009) (*Allison Engine II*) ("[T]he clear indication from Congress is that the revised language at issue here is applicable to 'claims' pending on June 7, 2008, and not to 'cases' pending on June 7, 2008").

existence of claims for payment pending on or after June 7, 2008.[2]

Given this, this Court must apply the heightened pleading and proof standards set forth in *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123 (2008). Under these standards, Carpenter's complaint fails to state a claim under Section 3729(a)(2) because it fails to allege that Abbott intended any false statement to be material to the government's decision to pay the allegedly false claims. *See United States ex rel. Duxbury v. Ortho Biotech Prods.*, 579 F.3d 13, 30 (1st Cir. 2009); *see also Hopper*, 2009 WL 4429519, at *8-9. This failure is fatal to Carpenter's Section 3729(a)(2) claim and compels dismissal. *See United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 47 (1st Cir. 2009) (affirming dismissal of an (a)(2) claim under Rule 9(b) where the relators "fail[ed] to connect the only falsity or fraud for which they provide any detail").[3]

Carpenter's kickback allegations also lack sufficient particularity to survive Rule 9(b). In his opposition, Carpenter recites allegations about a couple of Boston advisory boards that doctors were paid to attend and a Boston dinner for doctors at which he claims off-label use of Kaletra was promoted. Opp. at 16. Significantly, Carpenter does not allege in his complaint, or state in his response, that the payments made to these doctors were not fair market value for their services. *See, e.g.,* 42 C.F.R. § 1001.952(d) (Medicare and state health care programs safe harbor regulation for personal services and management contracts). More importantly, with the arguable exception of Dr. Cal Cohen, the complaint does not assert that these events have any connection to the doctors who allegedly "were responsible for writing multiple off-label Kaletra

---

[2] Carpenter concedes that Abbott's allegedly fraudulent conducted "ceased" in June 2008. Opp. at 8 n.8. This bars any future amendment to the complaint to add additional allegedly false claims occurring after that date.
[3] Alternatively, the Court should decline to apply the FCA amendments to Carpenter's claim because retroactive application would impose punishment for acts that were not punishable prior to the amendments, and violate the Ex Post Facto Clause of the U.S. Constitution. *See Allison Engine II*, 2009 WL 3626773, at *10.

prescriptions." Opp. at 16. This lack of a connection is fatal to Carpenter's claims under Rule 9(b). *See, e.g., United States ex rel. Poteet v. Lenke*, 604 F. Supp. 2d 313, 324 (D. Mass. 2009) (dismissing complaint under Rule 9(b) because relator failed to allege whether "recipients of the gifts ever purchased Medtronic products or filed a claim for Medicare benefits").[4]

While Carpenter alleges that Dr. Cohen received monies from Abbott and prescribed Kaletra off-label, Carpenter fails to allege that the payments to Dr. Cohen were anything other than fair market value for his services. As Carpenter himself states, Dr. Cohen is "a highly influential Boston AIDS physician" (Opp. at 14), so Abbott's desire to associate with him is hardly surprising and certainly not illegal, and Dr. Cohen's services come at a premium price. Carpenter cannot proceed on these allegations, which pile "inference upon inference." *Hopper*, 2009 WL 4429519, at *6.

Likewise, Carpenter's attempt to support his off-label promotion claim by using an alleged increase in the percentage of Kaletra once-daily prescriptions between fourth quarter 2005 and first quarter 2006 is misplaced. *See* Opp. at 16. Most importantly, Carpenter fails to allege that the increase was for *off-label* Kaletra prescriptions, which is at issue here. Moreover, considering other admitted facts, such as the FDA's approval of Kaletra tablets in October 2005 (which offered greater convenience and better tolerability than the Kaletra capsules previously in use), an increase in Kaletra once-daily use (whether on- or off-label) during this time frame is neither surprising nor connected to alleged off-label promotion. Carpenter's speculation that off-label promotion caused this increase cannot save his claim. *See, e.g., Duxbury*, 579 F.3d at 31

---

[4] In *Duxbury* the First Circuit held that the complaint failed to provide the essential facts regarding a widespread scheme to promote off-label. *See* 579 F.3d at 32. Carpenter's off-label allegations are similarly deficient under Rule 9(b) because he fails to allege the particulars of *any* off-label promotion to the specific providers who he claims submitted false claims for reimbursement.

(citing *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733 (1st Cir. 2007) (*Rost II*) (dismissing a complaint was proper where inferences only give rise to "speculation as to whether the alleged scheme caused the filing of false claims with the government"); *United States ex rel. Polansky v. Pfizer, Inc.*, No. 04-cv-704, 2009 WL 1456582, at *9-10 (E.D.N.Y. May 22, 2009) (rejecting relator's use of statistical evidence of increased prescriptions because it failed to "strengthen the inference of fraud beyond possibility.") (citing *Rost II*, 507 F.3d at 733).

Finally, Carpenter's reliance on *Rost II,* 507 F.3d 720, and *United States ex rel. Franklin v. Parke-Davis*, No. 96-cv-11651, 2003 U.S. Dist. LEXIS 15754 (D. Mass. Aug. 22, 2003) (*Parke-Davis II*), is mistaken. Opp. at 16-18. Based on these cases, Carpenter argues that he must only satisfy a simple tort law "substantial factor" causation standard. *See* Opp. at 16-18. When articulating that standard in 2003, however, the *Parke-Davis II* court noted that "neither the Supreme Court nor any Circuit Court of Appeals" had addressed whether pleading causation under the FCA was subject to a more demanding standard. *Id.* at *11-12. That is no longer true given the Supreme Court's *Allison Engine* opinion combined with its holding in *Iqbal*, as well as the recent trend of increasing skepticism toward claims similar to those asserted by Carpenter. *See, e.g., Hopper*, 2009 WL 1456582 at *9-10; *In re Zyprexa Prods. Liability Litig.*, Nos. 04-md-1596, 07-cv-645, ___ F. Supp. 2d ___, 2009 WL 4260857, at *57-60 (E.D.N.Y. Dec. 1, 2009).

More importantly, what constitutes a "substantial factor" sufficient to trigger liability depends entirely upon the specific factual context. The instant factual context is markedly distinct from *Parke-Davis* or *Rost*. Those cases involved the alleged off-label marketing of drugs for diseases entirely different than those for which they had been approved by the FDA. *See United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39, 45 (D. Mass. 2001) (*Parke-Davis I*); *United States ex rel. Rost v. Pfizer*, 446 F. Supp. 2d 6, 10 (D. Mass. 2006) (*Rost*

4

*I*). In both cases, the off-label promotion also dramatically expanded the potential patient population for the drug. Here, by contrast, the allegations involve alleged "off-label" marketing of a drug approved to treat HIV/AIDS for exactly that patient population, and only that patient population. Thus, the complaint fails to establish the necessary "direct link" between Abbott's alleged conduct and the government's decision to pay or approve false claims, and therefore the allegations are "too attenuated to establish liability." *See Allison Engine*, 128 S. Ct. at 2130. Accordingly, the complaint should be dismissed.[5]

### 2. Carpenter Fails to Plead a Kickback Scheme with Particularity

*Duxbury* refutes Carpenter's contention that he has alleged facts sufficient to show that Abbott knowingly and willfully made payments to providers for the purpose of inducing federally-funded healthcare referrals, as required for false claims liability under the Anti-Kickback Statute. *See* Opp. at 18-19. In *Duxbury*, the First Circuit said it was a "close call" whether a complaint sufficiently pled false claims based upon the payment of kickbacks, even though it was specifically alleged that the defendant put thousands of dollars of free drug samples in the hands of eight providers "so that" the providers could submit obviously fraudulent reimbursement claims *based on the objectively false pretense that they had actually purchased the free samples*. 579 F.3d at 30-31. There is no similar "close call" here.[6]

---

[5] As noted in Abbott's opening brief, Carpenter's complaint must also be dismissed to the extent it is based on false claims allegedly reimbursed by "ADAP (AIDS Drug Assistance Program), the Ryan White CARE Act and HDAP (HIV Drug Assistance Program in Massachusetts)" (Am. Compl. ¶ 41), because Carpenter identifies no claims submitted for reimbursement under these programs. Mem. at 15-16. Carpenter makes no response and apparently concedes this point.

[6] The kickback cases Carpenter cites are readily distinguishable. *See* Opp. at 19 n.13. In *United States ex rel. West v. Ortho-McNeil Pharm., Inc.*, 538 F. Supp. 2d 367 (D. Mass. 2008), the relator alleged a particular time when defendant's sales representative discounted the price of the antibiotic drug Levaquin for a specific hospital on the condition that the hospital refuse to stock a competitor's antibiotic. *Id.* at 391. *West* also involved specific instances of serial cash payments and other bribes, grants and gifts as part of the fraud. *Id.* Carpenter has failed to provide such particulars, which requires dismissal of his complaint. Carpenter's other cases, *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Labs., Inc.*, 491 F. Supp. 2d 12 (D. Mass. 2007) (*Ven-A-Care II*), and *California ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Labs., Inc.*, 478 F. Supp. 2d 164 (D. Mass. 2007)

### 3. Carpenter Fails to Allege with Particularity Claims for Reimbursement of Off-Label Prescriptions

Carpenter's reliance on *Duxbury* to argue that he has sufficiently alleged the actual submission of false claims to the government as required for claims brought under section 3729(a)(1) is misplaced. *See* Opp. at 19-20. In *Duxbury*, the First Circuit reviewed with approval its prior holding in *Rost II*, where it stated that merely describing alleged "illegal practices" related to off-label promotion does not "sufficiently establish that false claims were submitted for government payment in a way that satisfies the particularity requirement." 579 F.3d at 29. Rather, a relator must plead facts sufficient to overcome the possibility that doctors who prescribed a drug as a result of illegal marketing (and their patients) "withstood the temptation and did not seek federal reimbursement," or that doctors only prescribed off-label "where patients paid for it themselves or when the patients' private insurers paid for it." *Id*. (citations omitted). Moreover, the First Circuit specifically limited its holding to the unique facts of that case involving the provision of free drug samples to providers who submitted claims for reimbursement as if they'd paid for the samples. *Id*. at 32.

Here, similar "*reliable indicia*" necessary to support the a "*strong inference*" of actual submission of false claims are missing. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009); *Poteet*, 604 F. Supp. 2d at 324 n.22. Consequently, Carpenter's claims under section 3729(a)(1) must be dismissed.

---

(*Ven-A-Care I*), can also be distinguished factually. The kickbacks alleged in these Medicaid pricing cases involved alleged rank bribery and illegal price markups, which are qualitatively different than the alleged "kickbacks" Carpenter claims were paid to unspecified providers here for objectively bona fide services. *Compare Ven-A-Care I*, 491 F. Supp. 2d at 15, *with* Opp. at 13-14.

### 4. Carpenter Fails to Allege with Particularity Claims for Reimbursement Tainted by Kickbacks

Carpenter effectively acknowledges that he has not pled that doctors who allegedly received kickbacks to prescribe Kaletra either expressly or impliedly falsely certified that they were in compliance with the Anti-Kickback Statute but speculates that such false certifications must have been made. *See* Opp. at 20-21.  Further, Carpenter asserts that "the Complaint does not need to plead the legal theory of express or implied certification," citing *Connecticut General Life Insurance Co. v. Universal Insurance Co.,* 838 F.2d 612, 622 (1st Cir. 1988).  Opp. at 21. But *Connecticut General Life* is a pre-*Allison Engine*, pre-*Iqbal* case addressing Rule 8's notice pleading requirements, not Rule 9(b)'s particularity pleading requirements.  It does not absolve Carpenter of the need to plead facts sufficient to show that false claims for Medicare or Medicaid reimbursement were submitted under at least *some* cognizable legal theory.  Thus, Carpenter's failure to "allege with particularity any certification of compliance with federal regulations in order to obtain payments" is fatal to his Anti-Kickback Statute-based claims.  *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 233 (1st Cir. 2004).

### 5. Carpenter Fails to Allege with Particularity Claims Under State False Claims Acts

In an effort to excuse his failure to allege a single false claim in any jurisdiction other than Massachusetts (where his specific allegations are limited to a single pharmacy), Carpenter argues that Abbott's alleged nationwide scheme as a whole must be considered.  *See* Opp. at 21-23. Carpenter's argument is mistaken.  To begin, he misleadingly cites *Rost II,* 507 F.3d at 731 n.8, for his contention that "the Rule 9(b) analysis should be applied to the entire action, not on a jurisdiction-by-jurisdiction basis."  Opp. at 22.  What the First Circuit actually said is that "[t]he heightened pleading standard of Rule 9(b) generally applies to state law fraud claims brought in federal court." *Rost II,* 507 F.3d at 731 n.8.  As with the federal False Claims Act on which

7

these state statutes are based, "[e]vidence of an actual false claim is the *sine qua non* of a False Claims Act Violation." *Karvelas*, 360 F.3d at 225 (citations and internal quotation marks omitted); *see also United States ex rel. West v. Ortho-McNeil Pharm., Inc.*, 538 F. Supp. 2d 367, 392 (D. Mass. 2008) (ordering dismissal of "all claims under Fed. R. Civ. P. 9(b) except with respect to the years and region in which the relator worked").[7]

*Duxbury* is not to the contrary.  There were no state law claims involved in *Duxbury*.  579 F.3d at 15-16.  Instead, the issue was whether the relator's allegations were sufficient to allow him to maintain a claim under the federal False Claim Act for a "nationwide" scheme.  *Id.* at 31. *Duxbury* did not find allegations related to submission of false claims in a single state sufficient to support claims under other individual states' false claims acts, the mechanics and application of which may vary.[8]  Accordingly, Carpenter's non-Massachusetts state law claims must be dismissed.

### B. Carpenter Cannot Allege Medicaid False Claims in Massachusetts as a Matter of Law

Responding to Abbott's argument that he cannot maintain a claim under the Massachusetts False Claims Act because Massachusetts' Medicaid program, MassHealth, covers Kaletra off-label prescriptions (*see* Mem. at 21-22), Carpenter asserts MassHealth "does *not* in fact cover the cost of off-label prescriptions" and that whether federal Medicaid law permits state Medicaid programs to reimburse for off-label prescriptions "is a question of material fact not

---

[7]     Carpenter also fails to allege that each of these other jurisdictions' Medicaid programs would not reimburse for off-label prescriptions of Kaletra.  As noted in Abbott's opening brief and not refuted by Carpenter, at least some do, such as Virginia.  *See* Mem. at 22 n.14.
[8]     For the same reason, Carpenter's reliance on *Parke-Davis II*, , is misplaced (*see* Opp. at 22), because it, too, only involved claims under the federal False Claims Act.  *Parke-Davis II*, 2003 U.S. Dist. LEXIS 15754, at *1-2. The other case cited by Carpenter, *United States ex rel. Rost v. Pfizer, Inc.*, 253 F.R.D. 11 (D. Mass. 2008) (*Rost III*) (*see* Opp. at 22-23), involved state law claims, but limited discovery initially to Indiana, which was the only jurisdiction in which specific false claims had been alleged.

8

appropriate for resolution in a motion to dismiss." Opp. at 23-24. Carpenter is wrong on both counts.

First, whether federal law permits state Medicaid reimbursement of off-label prescriptions is unambiguously a question of law that goes to the heart of the alleged claims' falsity because a state's knowledge of off-label prescriptions and its decision to pay such claims undermine the existence of a false claim as a matter of law. *See, e.g., United States ex rel Rost v. Pfizer, Inc.*, 253 F.R.D. 11, 16 (D. Mass. 2008) (*Rost III*). Just as unambiguously and as Abbott noted in its opening brief, federal law commits the decision of whether a state Medicaid program may cover off-label prescriptions to each state's discretion. *See* Mem. at 3-4, 21-22.

Second, Carpenter fails to allege facts sufficient to establish that MassHealth does not, in fact, cover off-label Kaletra prescriptions. Certainly, the Massachusetts regulation on which he relies says no such thing, because it expressly permits off-label coverage which "the MassHealth agency determines to be consistent with current medical evidence." 130 C.M.R. § 406.413(C)(4). And Carpenter offers no response to the fact, noted in Abbott's opening brief, that the MassHealth Drug List, which governs reimbursement under the Massachusetts Medicaid program, lists Kaletra among the HIV/AIDS prescription drugs for which it will reimburse without prior authorization and without reference to whether the prescription is for off-label use. *See* Mem. at 22; MassHealth Drug List at 121.[9] In contrast, MassHealth uses prior authorization and other restrictions in its MassHealth Drug List to limit off-label prescribing for drugs for

---

[9] http://www.mass.gov/Eeohhs2/docs/masshealth/pharmacy/mh_druglist.pdf.

which there is no proper "medical evidence" for the off-label use.[10] Accordingly, Carpenter's claim under the Massachusetts False Claims Act must be dismissed.[11]

### C. Carpenter's Claims Are Implausible, Requiring Dismissal of the Complaint

As Abbott explained in its opening brief, off-label prescriptions of Kaletra are much better explained as being a consequence of the widespread use of off-label prescriptions of all sorts to treat HIV/AIDS and Kaletra's historical role as a leading HIV/AIDS drug than any alleged off-label promotional campaign or payment of kickbacks. *See* Mem. at 22-25. Carpenter does not specifically respond to this argument in his opposition.[12] Because Carpenter cannot establish a "claim to relief that is plausible on its face," the complaint should be dismissed. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

## III. CONCLUSION

Carpenter requests leave to amend his complaint again if the Court dismisses all or part of his claims. Opp. at 25 n.22. Carpenter has already amended his complaint, which was originally filed under seal more than two years ago. A repeated failure to cure pleading deficiencies is a ground for denying leave to amend. *Gagne*, 565 F.3d at 48. Accordingly, the complaint should be dismissed with prejudice.

---

[10] *See* Minutes From March 11, 2009 Massachusetts Drug Utilization Review Board Meeting at 3 (determining that a particular drug was being prescribed off-label and that restrictions to the MassHealth Drug List were necessary to ensure that the drug was not used for off-label purposes) *available at* http://www.mass.gov/Eeohhs2/docs/masshealth/pharmacy/dur_meeting-minutes-mar09.pdf. These minutes also show that MassHealth has the resources to determine what the Medicaid dollars it authorized are covering and considers whether drugs are being prescribed off-label.

[11] Carpenter only alleges that two patients – Patient Nos. 3 and 7 – were participants in MassHealth and had their prescriptions paid for by MassHealth. *See* Am. Compl. ¶¶ 188, 211. According to the amended complaint, these patients were treatment-experienced patients, who were switched to Kaletra once-daily. *Id.* at 188, 209. Carpenter has not identified a specific claim to MassHealth for Kaletra monotherapy, and thus, at a minimum, allegations relating to Medicaid payments for Kaletra monotherapy should be dismissed.

[12] Carpenter's reference to the December 2009 revision to the DHHS Guidelines is irrelevant to the issues raised by this motion (*see* Opp. at 7-8), which involves alleged false claims made well before this revision was issued.

Dated: January 5, 2010                           Respectfully submitted,

                                        By:        /s/ Thomas J. Frederick
                                            James F. Hurst (admitted *pro hac vice*)
                                            Thomas J. Frederick (admitted *pro hac vice*)
                                            Kathleen B. Barry (admitted *pro hac vice*)
                                            WINSTON & STRAWN LLP
                                            35 West Wacker Drive
                                            Chicago, Illinois 60601
                                            (312) 558-5600
                                            (312) 558-5700 – Fax
                                            jhurst@winston.com
                                            tfrederick@winston.com
                                            kbarry@winston.com

                                            John W. Moss (admitted *pro hac vice*)
                                            WINSTON & STRAWN LLP
                                            1700 K Street N.W.
                                            Washington, D.C. 20006
                                            (202) 282-5000
                                            (202) 282-5100 – Fax
                                            jwmoss@winston.com

                                            Peter E. Gelhaar (BBO# 188310)
                                            Michael S. D'Orsi (BBO# 566960)
                                            Donnelly, Conroy & Gelhaar, LLP
                                            One Beacon Street
                                            33rd Floor
                                            Boston, Massachusetts 02108
                                            617-720-2880
                                            617-720-3554 – Fax
                                            peg@dcglaw.com
                                            msd@dcglaw.com

                                            *Attorneys for Abbott Laboratories, Inc., incorrectly
                                            named as Abbott Laboratories*

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper or electronic copies will be delivered to those indicated as non-registered participants on January 5, 2010.

                                            /s/ Thomas J. Frederick
                                            Thomas J. Frederick