IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>THE STATE OF CALIFORNIA,<br>THE STATE OF DELAWARE,<br>THE DISTRICT OF COLUMBIA<br>THE STATE OF FLORIDA,<br>THE STATE OF ILLINOIS,<br>THE STATE OF INDIANA,<br>THE COMMONWEALTH OF MASSACHUSETTS,<br>THE STATE OF MICHIGAN,<br>THE STATE OF NEVADA,<br>THE STATE OF NEW YORK<br>THE STATE OF TENNESSEE,<br>THE STATE OF TEXAS,<br>AND THE COMMONWEALTH OF VIRGINIA<br>EX REL. PATRICK CARPENTER<br>                Plaintiffs,<br><br>vs.<br><br>ABBOTT LABORATORIES<br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIV. A. NO. 07-10918<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

PLAINTIFF'S SUR-REPLY MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT ABBOTT'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Jonathan Shapiro
Lynn Weissberg
STERN, SHAPIRO,
WEISSBERG & GARIN, LLP
90 Canal Street
Boston, MA 02114
(617) 742-5800
jshapiro@sswg.com
lweissberg@sswg.com

Sherrie R. Savett
Jeanne A. Markey
Gary L. Azorsky
Joy P. Clairmont
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
jmarke@bm.net
gazorsky@bm.net

**TABLE OF CONTENTS**

I. INTRODUCTORY STATEMENT ................................................................................... 1

II. LEGAL ARGUMENT ..................................................................................................... 1

    A. Plaintiff's Complaint Satisfies Rule 9(b) ................................................................ 1

        1. Plaintiff Alleges With Requisite Particularity The Causal Connection Between Abbott's Misconduct and The Filing of False Claims ................. 1

            a. Plaintiff's §3729(a)(2) Claim Satisfies 9(b) ................... 1

            b. Plaintiff's Kickback Claims Allege Causation With Particularity . 4

        2. Plaintiff Pleads Abbott's Kickback Scheme With Requisite Particularity . 7

        3. Plaintiff Alleges With Particularity Claims For Reimbursement ............... 8

        4. Plaintiff Has Alleged With Requisite Particularity Claims For Reimbursement Tainted By Kickbacks ....................................................... 8

        5. Plaintiff's State Law Claims Satisfy Rule 9(b) ........................................... 9

    B. Plaintiff Can Allege Medicaid False Claims In Massachusetts ............................ 10

III. CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allison Engine Co. v. United States ex rel. Sanders*,
    128 S. Ct. 2123 (2008) .................................................................................................. passim

*Personnel Adm'r of Mass. v. Feeney*,
    99 S. Ct. 2282 (1979) ............................................................................................................ 3

*Reno v. Bossier Parish Sch. Bd.*,
    117 S. Ct. 1491 (1997) .......................................................................................................... 3

*Strom v. Scios*,
    2009 U.S. Dist. LEXIS 119856 (D. Mass. December 23, 2009) .......................................... 7

*United States ex rel. Gagne v. Worchester*,
    565 F.3d 40 (1st Cir. 2009) ................................................................................................... 8

*United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*,
    579 F. 3d 13 (1st Cir. 2009) ........................................................................................ 2, 6, 7, 8

*United States ex rel. Franklin v. Parke-Davis*
    147 F. Supp 2d 39 (D. Mass. 2001)("*Parke-Davis I*") ......................................................... 7

*United States ex rel. Franklin v. Parke-Davis*,
    2003 U.S. Dist. LEXIS 15754 (D. Mass. Aug. 22, 2003) ("*Parke-Davis II*") ..................... 6

*United States ex rel. Poteet v. Lenke*,
    604 F. Supp. 2d 313 (D. Mass. 2009) .................................................................................. 5

*United States ex rel. Rost v. Pfizer*,
    253 F.R.D. 11 (D. Mass. 2008) ............................................................................................ 5

*United States ex rel. Rost v. Pfizer*,
    446 F. Supp. 2d 6 (D. Mass. 2006) ("*Rost I*") ..................................................................... 7

*United States ex rel. Rost v. Pfizer, Inc.*,
    507 F.3d 720 (1st Cir. 2007) ("*Rost II*") ............................................................................ 6, 8, 9

*United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Actavis Mid Atlantic LLC*,
    2009 U.S. Dist. LEXIS 92945 (D. Mass. Oct. 2, 2009) ................................................ 3, 4, 6

*United States ex rel. Walner v. Northshore Univ. Healthsystem*,
    2009 U.S. Dist. LEXIS 85541 (N.D. Ill. Sept. 18, 2009) ..................................................... 2

*United States v. Shaw*,
    106 F. Supp 2d 103 (D. Mass. 2000) ................................................................................... 4

**STATUTES/REGULATIONS**

31 U.S.C. §3729(a)(2) .................................................................................................... passim

42 U.S.C. §§ 300ff *et seq.* ........................................................................................................3

42 C.F.R. 1001.952(d) ..............................................................................................................4

42 C.F.R. §1001.952(d) ............................................................................................................4

130 CMR 406.413 (2009) .......................................................................................................10

Pub. L. No. 101-381, 104 Stat. 576 ..........................................................................................3

**OTHER AUTHORITIES**

John T. Boese, *Civil False Claims and Qui Tam Actions*, § 6.01 .......................................... 10

Rule 9(b) .........................................................................................................................1, 8, 9

S. Rep. No. 111-10 (2009) ........................................................................................................2

## I. INTRODUCTORY STATEMENT

Plaintiff's complaint (the "Complaint")[1] alleges with ample particularity multiple violations of the Federal False Claims Act under §§3729(a)(1) and (2), as well as violations under the analogous state false claims statutes. Accordingly, Defendant's motion to dismiss should be denied in its entirety.

## II. LEGAL ARGUMENT

### A. Plaintiff's Complaint Satisfies Rule 9(b)

#### 1. Plaintiff Alleges With Requisite Particularity The Causal Connection Between Abbott's Misconduct and The Filing of False Claims

##### a. Plaintiff's §3729(a)(2) Claim Satisfies 9(b)

Defendant's contention that Plaintiff's §3729(a)(2) claim is governed by the old language of the FCA, and not the amended language contained in FERA, is incorrect.[2] It rests on Defendant's faulty premise that in providing that the amendments to §3729(a)(2) relate back to "claims" pending on or after June 7, 2008, Congress intended the word "claims" to mean pending claims for government reimbursement, and not legal claims brought under the FCA. Defendant's reading of the word "claims" is simply unreasonable. The word "claims" in the Statute is modified by the phrase "under the False Claims Act" which makes clear that Congress intended that FERA's amendments apply to False Claims Act cases pending on or after June 7, 2008. In contrast, a claim for government reimbursement is not a claim "under the False Claims Act."

Congress intended the revised version of 3729(a)(2) to apply to all False Claims Act suits pending on or after June 7, 2008. The Senate Judiciary Committee report on FERA observed

---

[1] All paragraph references are to the Complaint.

[2] Section §3729(a)(2) has been renumbered Section 3729(a)(1)(B) under FERA. For the sake of consistency and to avoid confusion Plaintiff utilizes the original numbering herein.

1

that the holding in *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123 (2008), "is contrary to Congress' original intent in passing the [False Claims Act] which created a significant question about the scope and applicability of the FCA to certain false claims." S. Rep. No. 111-10 (2009). The Committee further reported that FERA is intended to expand the scope of the False Claims Act by eliminating *Allison Engine's* judicially imposed "intent" requirement. Insofar as all claims pending with a federal agency between June 7, 2008 and May 20, 2009 (FERA's effective date) would likely be processed before the government (or a relator on the government's behalf) had an opportunity to draft and file a False Claims Act complaint, Abbott's proposed reading of the word "claims" would essentially nullify FERA's §3729(a)(2) retroactivity provision.³ *See United States ex rel. Walner v. Northshore Univ. Healthsystem*, 2009 U.S. Dist. LEXIS 85541 (N.D. Ill. Sept. 18, 2009) (interpreting reference to "claims" in retroactivity provision of FERA to mean legal claims brought under the FCA).

Even if the pre-FERA language of §3729(a)(2), and thus *Allison Engine*, are applied to the allegations of the Complaint, Plaintiff has stated a proper claim for relief under 31 U.S.C. §3729(a)(2). Defendant asserts that under *Allison Engine*, Plaintiff's §3729(a)(2) claim must be dismissed because it fails to allege that Abbott intended any false statement to be material to the government's decision to pay the allegedly false claims. *See* Defendant's Reply at 2.⁴ Defendant is wrong. Relator has sufficiently pled the intent and materiality elements of a §3729(a)(2) claim in a manner entirely consistent with *Allison Engine*.

---

³ The First Circuit in *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F. 3d 13 (1st Cir. 2009) did not address the question of how to interpret the retroactivity provision of FERA and in particular, undertook no analysis of what Congress intended by the phrase "claims under the False Claims Act".

⁴ In *Allison Engine*, the Supreme Court stated that "a Plaintiff asserting a §3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the government's decision to pay or approve the false claim." 128 S. Ct. at 2126. *Allison Engine* made clear that its "intent" holding referred to defendant's awareness that its statement would potentially be relied upon by the government (as opposed to a private party), and not defendant's awareness of the truth or falsity of its statement. *Id.* at 2130 n. 2.

In *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Actavis Mid Atlantic LLC*, 2009 U.S. Dist. LEXIS 92945 (D. Mass. Oct. 2, 2009), in the context of a *qui tam* action alleging the reporting of inflated pricing information used to calculate Medicaid drug reimbursement amounts, the defendant pharmaceutical company submitted much the same argument as Defendant does here. After careful analysis, Judge Saris rejected this argument and upheld the sufficiency of plaintiff's §3729(a)(2) claims. Explaining that *Allison Engine's* requirements are not "nearly so daunting" as defendant made out, Judge Saris noted that *Allison Engine* excluded from the FCA's reach cases such as *Allison Engine* which concerned subcontractor defendants who defrauded contractors "with no indication that the government was meant to pick up the bill." *Actavis*, 2009 U.S. Dist. LEXIS 92945 at *19-20. For §3729(a)(2) liability to attach under *Allison Engine*, the Court explained, defendant must intend to get a false claim paid by the government "and not another entity." *Id.* (citing *Allison Engine* at 2129). Observing the "well-established" principle that defendant intends the natural consequence of its actions[5], Judge Saris concluded that "the natural and foreseeable consequence" of submitting a false claim to Medicaid is that the United States will provide funds to pay the false claim.[6] *Id.* Judge Saris' conclusion applies with equal force here. Plaintiff alleges that Abbott knowingly made false statements as to Kaletra's safety and indications with the intent to increase Kaletra's sales and thus, caused the submission of false claims to Medicare, Medicaid and the federal Ryan White CARE Act, in order to get fraudulent claims to be paid by the Federal (and State) Governments. ¶¶ 4, 7, 81, 89, 90, 91, 95, 96, 98, 100, 104, 105, 118. These allegations are sufficient to satisfy

---

[5] *See, e.g., Reno v. Bossier Parish Sch. Bd.*, 117 S. Ct. 1491 (1997); *Personnel Adm'r of Mass. v.* Feeney, 99 S. Ct. 2282 (1979).

[6] Like Medicare, the Ryan White CARE Act is a federally funded program. Pub. L. No. 101-381, 104 Stat. 576 (codified as amended at 42 U.S.C. §§ 300ff *et seq.* (2000)).

the pleading requirements of *Allison Engine*. The Complaint also satisfies *Allison Engine's* materiality requirement. A material false statement is one which is capable of influencing the government's decision (thus the falsehood must be potentially relevant) to pay or approve the false claim. *Actavis*, 2009 U.S. Dist. LEXIS 92945 at *21. The false statements and omissions of fact here (which concern Kaletra's safety and indications as they relate to once daily dosing for treatment-experienced patients and monotherapy) surely could, and not doubt would, have influenced the federal government's decision to pay for the prescriptions arising therefrom, had the government only known of them. *Id.*

          **b.**       **Plaintiff's Kickback Claims Allege Causation With Particularity**

Defendant maintains that Plaintiff never alleges as to the Boston Kaletra advisory boards in March and November of 2006 and the Kaletra promotional dinner at Davio's in July 2006, that the payments these attendee doctors received were not fair market value for their services. This is untrue. *See* ¶¶ 143, 153 and 158.

Even if discovery reveals that these doctors *were* paid fair market value for their services, the OIG Compliance Program Guidelines for Pharmaceutical Manufacturers issued in April of 2003 makes clear that this does not protect a defendant from potential liability under the Anti-Kickback statute. ¶40; s*ee also, United States v. Shaw*, 106 F. Supp 2d 103, 114 (D. Mass. 2000) ("Congress's intent in placing the term 'remuneration' in the statute in 1977 was to cover the transferring of anything of value in any form or manner whatsoever. Moreover Congress prohibited transactions where there is no direct payment at all from the party receiving referrals").[7]

---

[7] Whether Abbott's payments to doctors are immunized from liability under the Anti-Kickback Act under 42 C.F.R. §1001.952(d) is a question of fact and the burden is upon Defendant to establish its applicability. *See* 42 C.F.R. 1001.952(d) (applies to principal/agent contracts and defendant must satisfy seven standards with respect thereto).

Defendant incorrectly argues that, with the exception of Dr. Cal Cohen, nowhere does Plaintiff allege that Abbott's Boston Regional Advisory Boards in March and November of 2006, and its promotional dinner at Boston's Davio's in July of the same year, had any connection to doctors responsible for writing off-label Kaletra prescriptions.  However, Plaintiff reviewed Abbott prescriptions brought to a Boston Pharmacy and found roughly two-thirds of the Kaletra once-daily prescriptions were written off-label for therapy-experienced patients.  This strongly suggests that Abbott's off-label promotional campaign − including those events transpiring in Boston in particular − had a direct impact on prescribing patterns.  ¶¶173, 177-217.  Moreover, Abbott has ignored the fact that at least five Boston AIDS physicians identified in the Complaint as having written off-label Kaletra prescriptions were personally targeted for repeated sales calls, or in Dr. Cal Cohen's case, almost $500,000 in kickbacks.  In *United States ex rel. Poteet v. Lenke*, 604 F. Supp. 2d 313, 323 (D. Mass. 2009), by contrast, the plaintiff had generally failed to allege which of the defendants were even involved in the scheme and how they were involved.[8]

Impermissibly asking the Court to make factual determinations in its favor, Abbott claims the 200% jump in once daily prescriptions in first quarter 2006 cannot be considered in assessing the sufficiency of Plaintiff's allegations of the causal connection between Abbott's unlawful conduct and the filing of false claims.  However, this jump tellingly coincided with the beginning of Abbott's calculated, nationwide campaign to promote Kaletra off-label through the use of kickbacks and deception.  This allegation, particularly when viewed in conjunction with

---

Likewise, Abbott's factual assertion that "Dr. Cohen's services came at a premium price" (Def's Reply at 3) has no place in the context of a motion to dismiss.

[8]  *See also United States ex rel. Rost v. Pfizer*, 253 F.R.D. 11, 16-17 (D. Mass. 2008) (9(b) satisfied even though plaintiff did not allege that any of the improper financial incentives were paid to any of the doctors who caused the filing of false claims).

5

Plaintiff's other allegations linking Abbott's misconduct to the filing of false claims (¶¶178-217) gives further credence to the conclusion that false claims were caused to be submitted by Abbott's unlawful conduct.

Defendant argues: 1) that Plaintiff claims he has sufficiently pled causation if he satisfies "the substantial factor" test and 2) that neither *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720 (1st Cir. 2007) ("*Rost II*"), nor *United States ex rel. Franklin v. Parke-Davis*, 2003 U.S. Dist. LEXIS 15754 (D. Mass. Aug. 22, 2003) ("*Parke-Davis II*"), remain relevant to the causation analysis in light of *Allison Engine*. Defendant is wrong on both counts. As Plaintiff explained in his Opposition, in *Parke Davis II*, the court endorsed a *two-pronged test* for causation under the FCA with the first prong asking whether Defendant's actions played a substantial role in bringing about the harm and the second asking whether the harm was foreseeable. Second, *Allison Engine* has not rendered *Rost II* and *Parke-Davi*s II irrelevant. As an initial matter, *Allison Engine's* plain language regarding the elements of §3729(a)(2) speaks of intent and materiality, rather than causation. More importantly, *Allison Engine* will make a difference in instances such as those pertaining to subcontractors unaware that the government was meant to pick up their bill, but will have less impact in cases like *Actavis*, *Duxbury* and this case, which all concern false claims submitted to Medicaid and/or Medicare. Indeed, the *Allison Engine* Court indicated that false claims which are the natural, ordinary and reasonable consequences of a defendant's conduct should remain actionable under §3729(a)(2). *Allison Engine* at 2130. *Rost II* and *Parke-Davis II* are wholly consistent with such reasoning. Moreover, in both *Rost II* and *Parke-Davis II,* the courts addressed the pleading requirements for causation under the FCA in the context of both §3729(a)(1) and (a)(2) claims. *Allison Engine's* holding regarding intent and

6

materiality arises from language found only in §3729(a)(2). In any event, Plaintiff has alleged his §3720(a)(2) claim in a manner entirely consistent with *Allison Engine*.[9]

### 2. Plaintiff Pleads Abbott's Kickback Scheme With Requisite Particularity

Defendant renews its assertion that Plaintiff fails to allege the Kaletra kickback scheme with requisite particularity. The Complaint demonstrates otherwise. Aside from Dr. Cohen and his receipt of almost $500,000 from Abbott, Plaintiff supplies details of the remuneration Abbott gave to the over 1,200 physicians who attended promotional events, the dates (over 37) and locations throughout the United States at which the promotional events took place (at least 27 cities and 19 states), the identity of the Abbott representatives who spoke at the events (Michael Fath, Justin DiPisa, Kiran Patel, Kristin Carney among others), the content of the events and, in particular, the misrepresentations about Kaletra's safety and efficacy made therein. *See generally*, Exhibit B to Plaintiff's Opposition ("Pl's Opp."). By any measure, the Plaintiff has supplied ample detail. This conclusion is entirely consistent with *Duxbury*, 579 F.3d at 45-46

---

[9] Abbott seeks to distinguish the claims here from the off-label marketing FCA claims upheld in *United States ex rel. Rost v. Pfizer*, 446 F. Supp. 2d 6 (D. Mass. 2006) ("*Rost I*") and *United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39 (D. Mass. 2001) *("Parke-Davis I")* in asserting: 1) that unlike the off-label promotions in those cases Abbott was not seeking to expand the pool of potential patients by its off-label promotion of Kaletra and 2) that unlike *Rost I* and *Parke-Davis I*, Abbott's alleged off-label marketing did not involve marketing Kaletra for diseases other than AIDS, the disease for which the FDA had approved its use, and thus the link between Abbott's misconduct and the false claims is too attenuated. Neither of Abbott's distinctions can serve as a basis for dismissal here. Abbott well recognized the appeal of once daily dosing and was aggressively seeking to enlarge the potential pool of patients to whom Kaletra once daily could be offered by including everyone being treated for AIDS, and not merely those individuals who were newly diagnosed with the disease.

Second, Abbott fails to explain *why* the sufficiency of the link between Abbott's off-label marketing and the false claims submitted turns on whether it was promoting use of the drug for a disease other than AIDS. Plaintiff has adequately and with particularity alleged the link between Abbott's off-label promotion and the filing of false claims for what amounted to sub-optimal treatments for a deadly illness. The Complaint should not be dismissed on these grounds. *See Franklin v. Parke-Davis* 147 F. Supp 2d 39, 48-49 (D. Mass. 2001) (Complaint alleging, inter alia, off-label promotion of anti-seizure drug used as monotherapy and at dosing levels far above what the FDA had approved satisfied 9(b)); *Strom v. Scios*, 2009 U.S. Dist. LEXIS 119856 (D. Mass. December 23, 2009) (FCA complaint upheld as sufficient under 12(b)(6) and 9(b) where government alleged that defendant drug manufacturer promoted drug for non-acute episodes of congestive heart failure although the FDA had approved it only for use in the event of acute episodes).

(where the First Court extrapolated from a dozen examples of kickbacks to hold 9(b) satisfied as to a nationwide scheme over a six year period), as well as the other kickback cases from this District cited in Plaintiff's Opposition.

### 3. Plaintiff Alleges With Particularity Claims For Reimbursement

Plaintiff has alleged the details of over fifty claims for reimbursement of off-label prescriptions. Nevertheless, Abbott demands more detail, relying largely on *Rost II*. Nothing in the *Rost II* court's analysis of Rule 9(b) and the FCA detracts from the fact that Plaintiff has alleged with particularity information with respect to the false claims submitted. Indeed, Plaintiff goes beyond what is required insofar as the *Duxbury* and *Rost II* courts rejected the requirement that information regarding specific claims be alleged in those instances where a third party, rather than a defendant, has submitted the false claims.[10] Furthermore, in *United States ex rel. Gagne v. Worchester*, 565 F.3d 40, 46 fn. 7. (1st Cir. 2009), the First Circuit explained how under *Allison Engine*, to allege a §3729 (a) (2) claim, plaintiff need not provide details that identify particular false claims that were submitted to the government because there is no presentment requirement.

### 4. Plaintiff Has Alleged With Requisite Particularity Claims For Reimbursement Tainted By Kickbacks

Abbott contends that Plaintiff has failed to plead with requisite factual particularity the nature of the false certification which allegedly gave rise to the filing of false claims. Defendant is incorrect. As a matter of law, the FCA is violated whenever a Medicaid claim is presented in violation of the Anti-Kickback Statute. No express certification of compliance with the Anti-Kickback statute is required to render the claim a false one. *See* Pl's Opp. at 21, n. 15 and cases

---

[10] The *Duxbury* court confined its opinion to the facts of the case not because it was closing the courthouse door on other potential violations of the FCA arising from kickback claims, but rather, as it indicated in declining to "draft a litigation manual" of actionable scenarios under the FCA, because actionable fraud can arise in a countless variety of circumstances. 579 F.3d at 49-50.

8

cited therein.  Likewise, in concluding that violations of the Anti-Kickback Statute which give rise to requests for Medicare reimbursement necessarily result in false claims, courts have repeatedly recognized that the Medicare program *requires* providers to certify their compliance with the Anti-Kickback statute.  *See id.* at 20, n. 14.

Plaintiff alleges that Abbott's payment of ad board honoraria, airfare, meals, hotel rooms and research grants violated the Anti-Kickback Statute while prompting doctors and other health care professionals to write Kaletra prescriptions  which led to the submission of claims for  government reimbursement under Medicaid and Medicare for the cost of the drug.  In many instances, these prescriptions were for off-label use (once daily dosing in treatment-experienced patients or monotherapy) and are reflective of Abbott's deceptive off-label marketing campaign.  Plaintiff has thus pled ample facts to show the existence and nature of the false certification at issue.[11]

### 5. Plaintiff's State Law Claims Satisfy Rule 9(b)

Defendant offers no response to the fact the Complaint alleges that Abbott's off-label/kickback scheme was executed with equal force, and followed the same playbook, nationwide. Given its apparent success in Massachusetts, there is every reason to conclude that the scheme met with success elsewhere throughout the nation.  In *Rost II*, Plaintiff sought to have the court analyze the 9(b) issue individually under the FCA and  each of the state false claims acts as well.  The First Circuit expressly rejected this approach, adopting the position that  one analysis under 9(b) applies to all false claims statutes collectively.  This approach makes eminent sense because the state false claims statutes are generally modeled after the federal statute, a

---

[11] The claims submitted for reimbursement of Kaletra off-label prescriptions arising from Abbott's off-label promotion constitute false claims independent of Abbott's violations of the AKS.

point Defendant conceded in his opening memorandum. *See also* John T. Boese, *Civil False Claims and Qui Tam Actions*, § 6.01.[12]

### B. Plaintiff Can Allege Medicaid False Claims In Massachusetts

Defendant insists that as a matter of law, Plaintiff cannot allege Medicaid false claims in Massachusetts. This contention is meritless. Plaintiff has already explained that the Code of Massachusetts Regulations expressly provides that MassHealth does not pay for drugs prescribed for off-label uses except as the MassHealth Agency determines such use to be consistent with "current medical evidence". Pl's Opp. at 23-24; 130 CMR 406.413 (2009). Defendant offers nothing which hints, let alone establishes, that MassHealth had, in reliance on "current medical evidence," chosen to reimburse for Kaletra once daily dosing for treatment experienced patients or for Kaletra monotherapy.[13]

### III. CONCLUSION

In conclusion, Plaintiff respectfully renews his request that Defendant's motion to dismiss be denied in its entirety or, in the alternative, that Plaintiff be given leave to amend his Complaint.

---

[12] Contrary to Defendant's contention in footnote 7 of its Reply, Plaintiff's Complaint does in fact allege that the state Medicaid programs would not have reimbursed for the off-label prescriptions of Kaletra. *See* ¶ 47, "Counts" section. Further, Plaintiff does not concede that some states, such as Virginia, actually reimburse for off-label prescriptions of Kaletra. Discovery as to each state's Medicaid program has not yet been taken and, in any event, none of the states would have reimbursed for claims for Kaletra arising from kickback violations or deceptive off-label marketing.

[13] What Defendant does offer in the way of proof is wholly insufficient. The fact that Kaletra was on an approved list of AIDS drugs does not provide an adequate basis from which to conclude that MassHealth had approved its use on AIDS patients off-label. Likewise, MassHealth's utilization of "prior authorization" procedures in administering the program hardly means MassHealth had given a green light to reimbursement of off-label Kaletra prescriptions. In any event, even if MassHealth did reimburse for the off-label uses at issue here, it would not have done so had it known that those prescriptions arose from violations of the Anti-Kickback statute or from Abbott's deceptive off-label marketing campaign. Further, the question of whether the federal government permits States to reimburse for off-label Medicaid prescriptions is secondary to the question of whether MassHealth has chosen to reimburse for off-label Kaletra monotherapy or Kaletra once daily for treatment experienced patients. The answer to *that* question is clearly not.

Dated: January 12, 2010                    Respectfully submitted,

                                                       BERGER & MONTAGUE, P.C.

/s/ Gary L. Azorsky
Sherrie R. Savett
PA Bar No. 17646
Jeanne A. Markey
PA Bar No. 40175
Gary L. Azorsky
PA Bar No. 38924
Joy P. Clairmont
PA Bar No. 82775
1622 Locust Street
Philadelphia, PA  19103
(215) 875-3000

STERN, SHAPIRO, WEISSBERG
& GARIN, LLP
Jonathan Shapiro
BBO No. 454220
Lynn Weissberg
BBO No. 521340
Alexandra Deal BBO No. 660645
90 Canal Street
Boston, MA  02114
(617) 742-5800

*Attorneys for Relator*

## CERTIFICATE OF SERVICE

      I hereby certify this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

Dated: January 12, 2010                /s/Gary L. Azorsky
                                                  Gary L. Azorsky